UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BONNIE L. SALINA,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>PROVIDENCE HOSPICE OF SEATTLE, a<br>Washington non-profit corporation, et al.,<br><br>　　　　　　Defendants. | CASE NO. C02-2559RSM<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT |

　　　This matter is before the Court on defendants' motion for summary judgment on all claims. Oral argument was held on September 23, 2004, and the matter has been fully considered by the Court. For the reasons set forth below, the Court now GRANTS defendants' summary judgment motion.

BACKGROUND

　　　Defendant Providence Hospice of Seattle ("Hospice"), a non-profit corporation, provides hospice care for terminally ill children and adults in the Seattle area. Defendant Providence Health System is a separate non-profit corporation that owns health care facilities, including Hospice. On June 1, 2002, plaintiff Bonnie Salina was hired by Hospice as one of two payroll/accounts payable coordinators. Her initial performance reviews were somewhat unfavorable, mainly due to poor attendance at work. In response to the performance review, plaintiff informed her supervisor Donna Quatsoe in November 2000, that she suffered from fibromyalgia and hypertension. However, not all of her absences up to that point

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 1

were health-related; she also took time off for a move and for reasons related to a personal altercation with a neighbor. In March 2001, plaintiff applied for intermittent leave under the Hospice leave policy. The request was granted March 28, 2001, and she was allowed to take intermittent leave as her health required.

On April 9, 2001, plaintiff addressed a long memo to Rick LaFrance in the Human Resources department, complaining that she was being treated unfairly by her supervisor Ms. Quatsoe, and that the stress was causing her to have more absences. Ms. Quatsoe responded with a memo to Mr. LaFrance, documenting plaintiff's continued attendance problems, errors in reporting hours on her timecards, mistakes in her payroll work, conflicts between plaintiff and her co-workers, and one incident where plaintiff yelled at her. Both Ms. Quatsoe and plaintiff described the situation as "out of control." Rick LaFrance wrote a letter to plaintiff stating Hospice's willingness to accommodate her illness as needed. He explained that plaintiff would have to give permission to speak with her physician regarding what accommodations were appropriate, but plaintiff declined to give permission. The only accommodation she asked for was to work early hours to avoid heavy traffic. Her schedule was approved for her to work from 7:00 a.m. to 3:30 p.m.

On May 24, 2001, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that her supervisor was harassing her and threatening her on account of her disability. This charge was dismissed on August 21, 2001, without a finding of any violation by defendants.

Plaintiff continued to have problems with her work performance, absenteeism, and inaccurate hours on her timecards. In June 2001, she was asked to sign a letter acknowledging the timecard discrepancies and agreeing to an adjustment in her paycheck. She declined to sign the letter, but stated that she did not contest the need to adjust her paycheck. In July 2001, plaintiff requested to adjust her schedule so that she would work earlier, from 5:00 a.m. to 1:30 p.m., on Tuesdays and Thursdays. She was allowed to do so, but was required to e-mail her arrival time to her supervisor, who was not present at that early hour. This requirement was not unique to plaintiff; other employees who worked at times

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 2

without managerial supervision were also required to e-mail in their arrival time. However, plaintiff felt that the e-mail requirement was a form of harassment by her supervisor.

On November 8, and 12, 2001, plaintiff was issued three separate disciplinary notices, regarding failure to report her sick leave absences on time, falsification of time cards, and failure to complete certain essential functions of her job. These notices were presented to plaintiff at a meeting on November 14, 2001, along with a memo in which Ms. Quatsoe detailed plaintiff's continued performance and attendance problems. Below the section of the memo detailing these performance issues, plaintiff was asked to commit in writing to one of two proposed schedules, either 5:00 a.m. to 1:30 p.m. on all days but "payroll Tuesdays," or 7:00 a.m. to 3:30 p.m. every day. Plaintiff was advised in the memo that failure to sign the memo and commit to one schedule or the other would be considered a voluntary resignation. Plaintiff walked out of the meeting without signing.

The following day, November 15, 2001, when plaintiff did not return to work, Tim Keeler of Human Resources sent her a letter by certified mail, advising her that the signed memo must be returned no later than Monday, November 19, 2001, or plaintiff would be deemed to have resigned voluntarily. Plaintiff signed a receipt for this letter on November 16. She did not return the signed memo on November 19 as required, but on November 21, 2001 she stopped by to drop off a request for extended Family Medical Leave Act ("FMLA") leave. Tim Keeler states in his deposition that he advised plaintiff on that day that the time to sign the memo and commit to a schedule had passed, but that he would give her a seven-day extension. Plaintiff denies that there was any discussion about the November 15, letter, the need to sign the memo, or an extension. On November 29, 2001, defendants sent another certified letter to plaintiff, informing her that she was terminated as of November 14, 2001, for failure to sign and return the November 14, memo as required. On December 1, 2001, plaintiff mailed to Tim Keeler a letter dated November 16, 2001, together with the required memo, also signed and dated November 16. Defendant declined to reinstate her, and on August 8, 2002, plaintiff filed another charge of discrimination with the EEOC. That charge was dismissed as untimely on August 23, 2002.

Plaintiff then filed this lawsuit, alleging claims under the Americans with Disabilities Act

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 3

("ADA"), 42 U.S.C. § 12101 *et seq.*; the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140; the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; the Washington Law Against Discrimination, RCW 49.60.; and the Washington Consumer Protection Act, RCW 19.86. Defendants Providence Hospice of Seattle ("Hospice") and Providence Health System have moved for summary judgment on all claims.[1]

## DISCUSSION

I. ADA Claim.

Title I of the ADA prohibits discrimination in employment on the basis of disability. Responsibility for enforcing the provisions of the ADA is vested in the EEOC, using the remedies and procedures set forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"). 42 U.S.C. §12117(a). Title VII contains several distinct filing requirements with which a claimant must comply in bringing a civil action in district court. First, a charging party must file a charge with the EEOC within either 180 days or 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). The 300-day period applies only in a so-called "deferral state" where the party files first with the appropriate state or local agency. 42 U.S.C. § 2000e-5(c). This does not apply here because both of plaintiff's charges were handled by the EEOC. After the EEOC completes its investigation and issues a Notice of Right to Sue, the action must be filed in district court within ninety days. 42 U.S.C. § 2000e-5(f)(1). These time periods are not absolute jurisdictional requirements, but rather statutes of limitations subject to waiver, estoppel, and tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982); Kraft v. Valenzuela, 801 F. 2d 1170, 1174 (9th Cir. 1986).

Defendants have moved for summary judgment on the ADA claim on the basis that it is time-barred because plaintiff did not comply with the Title VII limitations periods. Plaintiff received a Notice of Right to Sue on her first EEOC claim on August 21, 2001. This complaint was filed December 23, 2002, more than a year later, so it is clearly not within the ninety-day period for that charge. Plaintiff

---

[1] The individual defendants Timothy Keeler, Donna Quatsoe, and Rick LaFrance were dismissed on the stipulation of the parties, and defendants Sisters of Providence and Providence Hospice Foundation were dismissed on an earlier summary judgment motion.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 4

received a Notice of Right to Sue on her second EEOC charge on August 23, 2002, more than ninety days before this suit was filed. That second charge was itself dismissed by the EEOC as untimely. Plaintiff has stated no facts to support waiver, estoppel, or tolling of the limitations period. Accordingly, her ADA claim is time-barred.

Even if the Court were to reach the merits of the ADA claim, it would fail. Under the ADA, a disabled person is a person with an actual physical impairment which substantially limits one or more major life activities, or a person regarded as having such an impairment. 42 U.S.C. § 12102(2). Under this ADA definition, plaintiff does not qualify as a disabled person because she has not identified any actual physical impairment which substantially limits even one major life activity. Although she alleges in a general way that her fibromyalgia causes pain and fatigue, which are exacerbated by stress, she has not alleged any actual limitation other than some difficulty driving in traffic in a car with a manual transmission and clutch. This is not one of the "major life activities" as defined under the ADA. *See*, 29 C.F.R. § 1630.2(i) (defining major life activities as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working").

II. <u>FMLA Claim</u>.

The FMLA provides a cause of action for an employee whose employer has violated the statute by denying or interfering with the employee's attempt to exercise "any right provided under this subchapter." 29 U.S.C. §§ 2615(a), 2617(a)(2). Plaintiff asserts that defendants violated the FMLA by terminating her employment while she was on FMLA leave in November 2001. Defendants have moved for summary judgment on this claim on the basis that plaintiff was already terminated when she submitted her FMLA request on November 21, 2001. In response, plaintiff contends that there is a factual issue as to when Mr. Keeler mailed the November 15 letter, which gave her until November 19 to return the signed memo committing to a schedule. Her FMLA claim rests on her contention that Mr. Keeler did not mail the November 15 letter on that day, that he possibly back-dated it, and that she was not aware of the November 19 deadline until she received the termination letter on November 29. However, indisputable facts in the record show otherwise.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 5

First of all, plaintiff cannot deny that she was at the November 14 meeting where she was given the memo on which she was required to either commit to a schedule, or be considered a voluntary resignation. She knew after reading the memo what was required of her. When she did not return to work with the signed memo the next day, Mr. Keeler wrote her a letter giving her a deadline of November 19 to return the signed memo. Plaintiff asserts that she does not recall when she first saw the November 15 letter. However, she signed a return receipt for the letter on November 16, 2001. She states in her deposition that the November 15 letter was not included in the packet for which she signed on November 16, but other evidence in the record demonstrates that she did in fact see the November 15 letter on November 16. Specifically, her response to the November 29 termination letter is dated November 16, and refers to **both** the November 14 memo and the November 15 letter. Thus, her statement that she does not recall seeing the November 15 letter fails to raise an issue of fact. It is not necessary for the Court to make credibility determinations in order to find that plaintiff's own November 16 letter controverts her lack of memory.

The only possible factual dispute related to the FMLA claim concerns Mr. Keeler's statement that when plaintiff dropped off the FMLA request on November 21, he reminded her of the absolute necessity to sign the memo and commit to a schedule, and then gave her a one-week extension to comply. Plaintiff denies that Mr. Keeler said anything about this when she saw him on November 21, or mentioned the November 14 and 15 memos at all. This is not a material factual dispute to preclude summary judgment. If the facts are viewed in the light more favorable to plaintiff—that is, her view of the facts is credited as true—no one-week extension was given, and her termination was effective on November 19 when the original deadline for returning the signed memo expired. As her request for FMLA leave was made after her termination, it was invalid, and she has no claim under the FMLA.

III. ERISA claim.

Plaintiff has presented neither facts nor argument to oppose summary judgment on this claim. It is accordingly dismissed pursuant to Local Rule CR 7(b)(2).

IV. WLAD Claim.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 6

Plaintiff has also asserted a claim under the Washington Law Against Discrimination, RCW 49.60 ("WLAD"). Defendants have moved for summary on this claim on the basis that Providence Hospice is a religious non-profit organization exempt from WLAD claims. The relevant statute provides that an employer subject to suit "does not include any religious or sectarian organization not organized for private profit." RCW 49.60.040(3). The cases cited by plaintiff to overcome this statutory exemption are inapposite; they are cases based on tax exemptions, not the WLAD. The Washington Supreme Court has addressed the actual exemption at issue here in the context of a health care facility. Farnam v. Christa Ministries, 116 Wash. 2d 659 (1991). Under the standards set forth in Farnam, Providence qualifies for the religious organization exemption, and is not subject to suit under the WLAD.

## CONCLUSION

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, it any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotrex Corp. V. Catrett, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. F.R.Civ. P. 56(e). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is not the Court's function at the summary judgment stage to determine credibility or to decide the truth of the matter. Id. Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Id. at 255.

As set forth above, the facts brought forth by defendants demonstrate that they are entitled to judgment as a matter of law on the ADA, FMLA, ERISA, and WLAD claims. As to these claims, defendants' motion for summary judgment is GRANTED, and these claims are DISMISSED with

prejudice. Pursuant to 28 U.S.C. § 1367(c) (3), the Court declines supplemental jurisdiction over the remaining state law claim under the Washington Consumer Protection Act, and any remaining claims for intentional or negligent infliction of emotional distress.   These claims are accordingly dismissed without prejudice.

    The Clerk shall enter judgment in favor of defendants as set forth herein.

    DATED this ___11___ day of ___April___, 2005.

*[signature]*

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT- 8